MONTY WILKINSON
Acting Attorney General
ROBERT S. BREWER, JR.
United States Attorney
MICHAEL G. WHEAT, CBN 118598
JOSEPH J.M. ORABONA, CBN 223317
JANAKI G. CHOPRA, CBN 272246
COLIN M. MCDONALD, CBN 286561
Special Attorneys of the United States
880 Front Street, Room 6293
San Diego, CA 92101
619-546-8437/7951/8817/9144
michael.wheat@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br>　　v.<br><br>RUDOLPH B. PUANA (1),<br><br>　　　　　　Defendant. | CR. No. 19-00015-01-JMS-WRP<br><br>UNITED STATES' NOTICE OF:<br>(1) EXPERTS AND OTHER WITNESSES;<br>(2) 404(b) EVIDENCE;<br>(3) AUTHENTICATION PURSUANT TO FED. R. EVID. 902(11);<br>(4) SUMMARIES OF VOLUMINOUS RECORDS PURSUANT TO FED. R. EVID. 1006 |

COMES NOW the plaintiff, United States of America, by and through its counsel, Monty Wilkinson, Acting Attorney General, Robert S. Brewer, Jr., United States Attorney, and Special Attorneys Michael G. Wheat, Joseph J.M. Orabona, Janaki G. Chopra, and Colin M. McDonald, and hereby files its above-referenced Notice, based on the files and records in this case.

# I

# INTRODUCTION

Pursuant to Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure and Federal Rules of Evidence 702, 703, 705, 404(b), 902(11), and 1006, the United States hereby provides notice of experts and certain witnesses, 404(b) evidence, reliance on business record certifications, and the use of summaries of voluminous records.

The United States reserves the right to supplement this notice with additional disclosures prior to trial. For example, on January 7, 2021, the United States received reciprocal discovery from the defense, which consisted of certain medical and pharmacy records. The United States' medical experts discussed below will review this reciprocal discovery and determine if supplemental reports are appropriate.

# II

# NOTICE OF EXPERTS AND OTHER WITNESSES

The United States intends to call certain witnesses at trial. While the United States does not concede that all of these witnesses are "experts," in an abundance of caution, the United States hereby gives notice of its intent to call the following witnesses who may be qualified as "expert witnesses": (1) Dr. Gregory Polston; (2) Dr. Kevin Kunz; (3) Bureau of Alcohol, Tobacco, and Firearms (ATF) Special Agent Joseph Villagomez; (4) Drug Enforcement Agency (DEA) Diversion Investigator (DI) Yekaterina Blissard; (5) Federal Bureau of Investigation (FBI)

Forensic Accountant Laurice Otsuka; and (6) Dr. Lynn Welch.

A summary of each witness's proposed testimony is contained below.

**A.     Gregory Polston, M.D.**

Dr. Gregory Polston is a Board-Certified Anesthesiologist and Pain Management Specialist. Dr. Polston has more than 25 years of experience as an anesthesiologist. He holds an appointment as an associate professor in the Department of Anesthesiology at the University of California, San Diego, School of Medicine, and as section chief of pain service at the Veterans Medical Center in La Jolla, California. Since 2008, Dr. Polston has served as the Associate Medical Director of the University of California, San Diego's Health Center for Pain Medicine. Dr. Polston is a member of several professional medical societies, including the American Academy of Pain, the American Pain Society, and the American Society of Interventional Pain Practitioners. Dr. Polston has co-authored chapters of various medical texts and journal articles dealing with pain medicine. He has also frequently served as a medical expert reviewer for the Medical Board of California.

Dr. Polston's training and experience, which form the basis for his testimony and opinions, are further detailed in his curriculum vitae, which was produced to defense counsel on January 29, 2021. The United States expects Dr. Polston will testify about the topics identified below. A copy of Dr. Polston's opinion report was also produced to defense counsel on the same date. A full list of the discovery items

reviewed by Dr. Polston in preparation for his report is attached as Exhibit C to his report. These items include records maintained by Rudolph Puana ("Puana") and Puana's pain clinics, including medical records and notes, prescription records from the State of Hawaii, records from pharmacies in the State of Hawaii, records from the Department of Health and Human Services, witness statements, witness testimonies, and reports of interviews from this case.

Dr. Polston will explain the Controlled Substances Act ("CSA") of 1970 and how controlled substances are classified federally into drug schedules. Dr. Polston will explain how the CSA regulates the manufacture, distribution, prescribing, and dispensing of controlled substances, including oxycodone, hydrocodone, fentanyl, and Xanax. He will further explain how the schedules in the CSA classify controlled substances based on their risk of abuse and medicinal value. Based on his training and experience, Dr. Polston is familiar with these types of drugs, including their general medical uses, regulations on distribution, brand name forms, and available dosage levels.

Dr. Polston will further explain the applicable guidelines – the Use of Controlled Substances in the Treatment of Pain published by the Federation of State Medical Boards and the Hawaii Board of Medical Examiners Pain Management Guidelines – which outline the requirements and regulations for prescribing controlled substances for pain.

Based on his experience and training, Dr. Polston will opine that Puana

violated the standard of care because he prescribed and distributed controlled substances to patients with whom he had not established a physician-patient relationship, and while he was suffering from his own drug addiction. Specifically, Dr. Polston will explain how a physician-patient relationship is established and why that is required to prescribe controlled substances. He will then explain, based on his training and experience, that clinic records maintained by Puana for Christopher McKinney, Joshua DeRego, Elena Rodriguez, Katherine Kealoha, and Waylon Kealoha showed a lack of a physician-patient relationship because they lacked clinical indications, physical examinations, clinic visits, and other documentation which is required for the prescription of controlled substances. Dr. Polston will further explain that Puana's use of a handwritten notebook violated the standard of medical practice and care in many ways, including that it was not a legitimate medical record because it did not document clinical observations and it was in violation of the CSA as the entries did not reflect evidence of written prescriptions as is mandated when dispensing controlled substances such as opioids (hydrocodone, oxycodone), benzodiazepines, and testosterone. Dr. Polston will also explain that Puana's prescribing practices violated the standard of care because he abused opioids and suffered from addiction while prescribing controlled substances and treating patients.

In addition, Dr. Polston is expected to opine that Puana prescribed and dispensed controlled substances without a legitimate medical purpose and outside

the usual course of professional medical practice. Dr. Polston will explain that based on his training and experience, Puana's prescription of controlled substances to the above-named "patients" did not appear to be for a legitimate medical purpose based on the medical records reviewed from the clinic and Puana's handwritten notebook. Dr. Polston will also explain that available records suggest that Puana falsified clinic records to make them appear legitimate for the purpose of prescribing controlled substances even though there was not a legitimate medical purpose for such prescriptions. Dr. Polston will further explain that Puana appears to have used his medical practice as a cover for the unauthorized distribution or dispensation of controlled substances for himself and others without medical necessity.

      B.     **Kevin Kunz, M.D.**

Dr. Kevin Kunz is a Board-Certified physician specializing in Preventative and Addiction Medicine. He also holds a Masters Degree in Public Health. Dr. Kunz is a Diplomate of the American Board of Preventative Medicine with a specialty in addiction medicine and a Distinguished Fellow of the American Society of Addiction Medicine. Dr. Kunz has more than 25 years of experience as a physician specializing in addiction medicine. He holds an appointment as an associate clinical professor in the Department of Psychiatry at the University of Hawaii, a senior consultant for the Hawaii Opioid Response Network, and an addiction medicine physician at the West Hawaii Community Health Center. Since 2008, Dr. Kunz has served as founding President and later Executive Vice President of the American

College of Academic Addiction Medicine and the American Board of Addiction Medicine (the latter position ending on December 31, 2020). Dr. Kunz has lectured broadly as an expert in the State of Hawaii and nationally at addiction conferences and worked in small groups of experts that developed the content for the field of addiction medicine. Dr. Kunz has served as an author, co-author, or editor for various academic literature in the field of addiction medicine, such as the Program Requirements and the Addiction Medicine Fellowship Learning Milestones for the Accreditation Council for Graduate Medical Education, the development of a national weekly didactic session for Addiction Medicine Fellows, and chapters in the primary textbook of Addiction Medicine, Principles of Addiction Medicine, and Essentials of Addiction Medicine.

    Dr. Kunz's training and experience, which form the basis for his testimony and opinions, are further detailed in his curriculum vitae, which was produced to defense counsel on January 29, 2021. A copy of Dr. Kunz's report was also produced to defense counsel on the same date. The United States expects that Dr. Kunz will testify about the topics identified below. A full list of the discovery items reviewed by Dr. Kunz in preparation for his report is attached as an Appendix to his report. These items include witness statements and testimonies, reports of interviews, cellphone (Whatsapp) communications, and clinic records from Puana's clinic.

    Dr. Kunz will opine that Puana meets the DSM-5 criteria for severe opioid, cocaine, and alcohol addiction during the relevant period of the indictment. To

7

support his opinion, Dr. Kunz will also explain the following, which is based on his training and experience in the field of addiction medicine, both academically and clinically: (1) the use of DSM-5 criteria to assess addiction; (2) the rate of addiction of various controlled substances, including cocaine, opiates, and alcohol among adults in the United States; (3) the rate of addiction of multiple substances among adults in the United States; (4) substances commonly abused by physicians in the United States, categorized by field of specialty, and the reasons underscoring the abuse; (5) the addictiveness of alcohol, cocaine, and opioids, and why individuals are susceptible to addiction; and (6) the meaning and purpose of the "trinity," or poly-drug addiction.

    C.    **ATF Special Agent Joseph Villagomez**

The United States intends to call ATF Special Agent Joseph Villagomez as an expert on firearms. Agent Villagomez has been an ATF agent since 2014. Agent Villagomez graduated from the Federal Law Enforcement Training Center's Criminal Investigation Program and the ATF Special Agent Basic Training Program. He is currently assigned to the ATF Honolulu field office and has conducted numerous investigations involving firearms and ammunition. He is currently one of two interstate nexus experts employed by ATF in Honolulu. Agent Villagomez has received multiple trainings in interstate nexus analysis. In 2018, Agent Villagomez completed the ATF Interstate Nexus Training in Seattle, Washington. This training provided instruction for accurate firearms identification,

8

determination of manufacture and place of manufacture. In 2019, Agent Villagomez attended the ATF Advanced Interstate Nexus Training in the New England area. This training included several tours of firearm manufacturing facilities where Agent Villagomez observed various methods of manufacturing receivers or frames and other firearms components, and the placement of identifying markings to include the serial numbers on firearms. During his tenure as an ATF Agent, Agent Villagomez has personally examined hundreds of firearms and ammunition for the purpose of determining the manufacturer and place of manufacture.

Agent Villagomez's training and experience, which form the basis for his testimony and opinions, are further detailed in his statement of qualifications, which was produced to defense counsel on January 29, 2021. The United States expects that Agent Villagomez will testify about the topics discussed below.

Based on his training and experience, Agent Villagomez will testify that the State of Hawaii does not have any commercial firearm manufacturers. Agent Villagomez has reviewed the firearms listed in the indictment. His opinion is that each of the firearms was manufactured outside the State of Hawaii and traveled in interstate commerce. His report pertaining to the Glock firearm was produced to the defense on July 7, 2020. *See* KEALOHA-REPORTS-042240. Any additional reports pertaining to additional firearms listed in the indictment will be provided prior to trial.

//

**D.     DEA Diversion Investigation Yekaterina Blissard**

DI Blissard was hired by the DEA in May 2017, and is currently assigned to the Honolulu Office. Prior to her employment with the DEA, DI Blissard was a branch manager of several federal credit unions. After starting her employment with the DEA in 2017, DI Blissard completed the Basic Diversion Investigator Class in Quantico, Virginia. This course consisted of two-and-a-half months of drug diversion training. The training generally covered topics including performing audits and conducting criminal and civil investigations of DEA registrants (including doctors, pharmacies, manufacturers, and distributors). Additionally, in 2019, DI Blissard attended a four-day Tactical Diversion School in Tennessee, which focused on the criminal investigation of drug diversion of medical practitioners and pharmacies.

Since January 2018, DI Blissard has been assigned to Diversion Program in the Honolulu District Office and has been responsible for conducting audits of DEA registrants and investigating the diversion of controlled substances, including by medical professionals. As part of the auditing process, DI Blissard is trained to account for all drugs in and out of a particular DEA registrant. In order to perform this accounting, DI Blissard regularly analyzes various databases, including Hawaii's prescription drug monitoring program (HI-PMDP), along with pharmacy and medical practitioner records.

During her time with DEA, DI Blissard has been involved in approximately

forty investigations of DEA registrants, including investigations into the unlawful diversion of controlled substances. In addition to the cases that DI Blissard has personally been involved in, DI Blissard also regularly communicates with her colleagues in Honolulu and other districts regarding prescription drug diversion and with medical experts regarding appropriate conduct by medical professionals in prescribing and handling controlled prescription drugs.

DI Blissard's training and experience, which form the basis for her testimony, are further outlined in her curriculum vitae, which was produced to defense counsel on January 29, 2021. Draft summary charts prepared by DI Blissard to accompany her testimony were produced to defense counsel on the same date. The United States expects DI Blissard will testify about the topics identified below.

<u>DEA Registration</u>

DI Blissard will testify that all doctors must obtain DEA registration prior to prescribing controlled substances. DI Blissard will explain that a doctor who is registered with the DEA to prescribe controlled substances may not do so if such prescription falls outside the usual course of professional practice and is without a legitimate medical purpose. DI Blissard will testify about Defendant's DEA registration numbers.

<u>Drug Scheduling</u>

DI Blissard will explain that controlled substances are identified by a system of drug scheduling. The schedule in which a controlled substances falls varies

depending on a drug's potential for abuse and potential medical value, with Schedule I drugs having no medicinal value and a high level of abuse and Schedule V being on the other end of the spectrum. In particular, DI Blissard will provide a description of drugs pertinent to the charges in the Superseding Indictment, including those prescribed by Defendant Puana to his co-conspirators—oxycodone and hydrocodone (Schedule II drugs) and lorazepam, zolpidem tartrate, and alprazolam (Schedule IV drugs). Based on her training and experience, DI Blissard is familiar with these types of drugs, including their general medical uses, regulations on distribution, brand name forms,[1] and available dosage levels.

Prescription Records and Summary Charts

As part of her duties as a DI, DI Blissard regularly reviews prescription records from pharmacies, medical practitioners, and the State of Hawaii's Prescription Drug Monitoring Program (HI-PDMP) to ensure compliance with regulations and detect potential drug diversion. Based on her training and experience, DI Blissard is familiar with the records generated pertaining to prescription medication, including the format in which HI-PMDP produces its records. In this case, DI Blissard analyzed records of prescriptions written by Rudolph Puana from various sources—including HI-PMDP, Foodland Medicine

---

[1] For example, based on her training and experience, DI Blissard is aware and will testify that hydrocodone/acetaminophen is the brand name Vicodin, and that oxycodone/acetaminophen is the brand name Percocet.

Cabinet, and CVS— and summarized those records into chart form. The United States produced several draft summary charts to defense counsel on January 29, 2021, and will provide any additional charts and finalized versions of the charts prior to trial. All of the underlying documents that the summaries are based upon have been produced to the defense and are accompanied by a certificate of authenticity.

  E. **FBI Forensic Account Lauric Otsuka**

The United States intends to call FBI Forensic Accountant Laurice Otsuka to testify at trial. In this case, Ms. Otsuka reviewed information relevant to the pending charges, namely, voluminous travel and tuition payment records, and created summary charts of such information. The United States produced drafts of these charts to the defense on January 29, 2020. The United States intends to call Ms. Otsuka at trial to introduce these summary charts pursuant to Fed. R. Evid. 1006. All of the underlying documents that the summaries are based upon have been produced to the defense and are accompanied by a certificate of authenticity. Ms. Otsuka is a Certified Public Accountant (CPA) and may testify to basic accounting/financial terms as part of her testimony. Such testimony would be based on her training and experience as a CPA and FBI forensic accountant. We do not intend to solicit any expert opinions from Ms. Otsuka. A copy of Ms. Otsuka's curriculum vitae was produced to the defense on January 29, 2021.

  F. **Lynn Welch, M.D.**

 Although she is a licensed medical doctor, we do not intend to elicit expert

opinion testimony from Dr. Lynn Welch (formerly Lynn Puana). Rather, we intend to elicit her testimony as a percipient witness to relevant facts, e.g., statements and conduct of Defendant Puana, observations at the Puana Pain Clinic, and practices and procedures employed by the clinic, including recordkeeping practices and drug-testing requirements of patients receiving prescriptions from the clinic. Dr. Welch outlined these clinic practices and procedures during her grand jury testimony and in several interviews, the transcript and reports of which have been produced to the defense. *See, e.g.,* KEALOHA-GJT-010694, KEALOHA-REPORTS-026563, KEALOHA-REPORTS-034192, KEALOHA-REPORTS-038561, KEALOHA-REPORTS-041992, KEALOHA-REPORTS-042258.

### III

### AUTHENTICATION PURSUANT TO FED. R. EVID. 902(11)

The United States has produced certificates of authenticity pursuant to Fed. R. Evid. 902(11) from various third-party custodians to the defense. The United States intends to rely on such certificates to establish the authenticity and admissibility of various records of regularly conducted business activity. *See* Fed. R. Evid. 803(6). Examples include phone records, financial records, records obtained from pharmacies and medical providers, travel records, and school records. In particular, the United States intends to rely on the following certificates of authenticity:

- American Airlines - KEALOHA-AA-000001
- American Board of Pain Medicine - KEALOHA-ABPM-000001
- AT&T
    - KEALOHA-ATT-000001.001
    - KEALOHA-ATT-005515
    - KEALOHA-ATT-007698
    - KEALOHA-ATT-014214
    - KEALOHA-ATT-014361
    - KEALOHA-ATT-015248
    - KEALOHA-GJ-BL147-ATT-000001
    - KEALOHA-GJ-BL337-AT&T-000001
    - KEALOHA-GJ-BL451-ATT-000001
    - KEALOHA-GJ-BL668-ATT-000001
    - KEALOHA-GJ-BL854-ATT-000001
    - KEALOHA-GJ-BL889-ATT-000001
- Bank of Hawaii - KEALOHA-GJ-BL843-BOH-000001
- Big Island Pain Clinic - KEALOHA-GJ-BL855-BIPC-000001
- State of Hawaii Department of Commerce and Affairs - KEALOHA-DCCA-000001
- C&S Hunting - KEALOHA-GJ-BL856-C&S-000001
- CVS Pharmacy - KEALOHA-GJ-BL894-CVS-000001
- Foodland Pharmacy - KEALOHA-GJ-BL893-FOODLAND-000001
- Hawaii Preparatory Academy
    - KEALOHA-HPA-000001
    - KEALOHA-HPA-000088
- Hawaiian Airlines - KEALOHA-GJ-BL840-HA-000001
- Henry Schein - KEALOHA-GJ-BL803-HENRYSCHEIN-000001
- Kailua Family Pharmacy - KEALOHA-GJ-BL790-KAILUA-PHARM-000001
- Narcotics Enforcement Division
    - KEALOHA-GJ-BL834-SOH-000001
    - KEALOHA-GJ-BL849-SOH-000001
    - KEALOHA-GJ-BL891-NED-000001
- Puana Pain Clinic - KEALOHA-GJ-BL835-PPC-000001
- United Airlines - KEALOHA-UA-000001
- Verizon Wireless
    - KEALOHA-VERIZON-000001
    - KEALOHA-VERIZON-000262
    - KEALOHA-GJ-BL160-VERIZON-000001
    - KEALOHA-GJ-BL338-VERIZON-000001

Additionally, the United States intends to introduce certified TECS records produced to the defense on January 21, 2021. *See* KEALOHA-TECS-000001.

The United States may provide notice to the defense of additional certificates of authenticity in advance of trial.

## IV

## NOTICE OF SUMMARIES PURSUANT TO FED. R. EVID. 1006

As outlined above, the United States intends to call multiple witnesses—including DI Blissard and Ms. Otsuka—to introduce summary charts of voluminous records that are otherwise admissible under Fed. R. Evid. 1006. The United States produced draft charts from DI Blissard and Ms. Otsuka on January 29, 2021. The business records underlying these charts are all accompanied by a certificate of authenticity and have all been produced to the defense previously in discovery. The United States may provide notice to the defense of additional summary charts in advance of trial.

## V

## EVIDENCE UNDER RULE 404(b)

The Superseding Indictment returned in this case identifies various unlawful prescriptions written by Puana to his co-conspirators. Beyond the substantive distribution counts charged, the United States intends to introduce evidence of the complete prescription history between Puana and his co-conspirators during the

course of the charged conspiracy. This history is direct evidence of the conspiracy and inextricably intertwined with the substantive distribution counts. For example, in statements produced to the defense, co-conspirators Joshua DeRego and Elena Rodriguez, a married couple, state that Puana started writing oxycodone prescriptions for them so they could resell the oxycodone to pay for certain family expenses. And as outlined in the prescription records produced and DI Blissard's draft summary charts, the near-monthly prescriptions of oxycodone from Puana to Rodriguez started—without any preceding lesser medication—in February 2013. This complete prescription history, then, establishes the charged conspiracy. It is also inextricably intertwined with the substantive distribution counts charged involving DeRego and Rodriguez, which begin with these same oxycodone distributions in April 2014, *see, e.g.*, Counts 25-38. A similar analysis applies to co-conspirator Christopher McKinney, who started receiving significant quantities of oxycodone from Puana—with minimal preceding prescription history—in April 2015, with substantive counts beginning in May 2015, *see, e.g.*, Counts 3-24.

     Even while Rule 404(b) is not applicable, in an abundance of caution, the United States nonetheless is providing notice of Puana's prescription history with his co-conspirators. This evidence is not offered for any "propensity" purpose. Rather, this evidence is admissible to establish the charged conspiracy, place into context the substantive distribution counts, and prove Puana's intent and plan to unlawfully distribute controlled substances.

Additionally, the United States intends to introduce evidence establishing that over 50 percent of the 30MG oxycodone tablets prescribed by Puana between 2012 and 2017 went to only four people: co-conspirator Rodriguez, the parents of co-conspirator DeRego, and co-conspirator McKinney. During this time period, Puana prescribed controlled substances to approximately 995 patients. This highly skewed oxycodone prescription history establishes Puana's plan and practice of distributing significant amounts of oxycodone to a small group of individuals he believed he could trust and control, and ultimately that the prescriptions of oxycodone to Rodriguez and McKinney, as charged, were outside the scope of medical practice and without medical necessity.

DATED: February 1, 2021.            Respectfully submitted,

                                                        MONTY WILKINSON
                                                       Acting Attorney General
                                                       ROBERT S. BREWER, JR.
                                                       United States Attorney

                                                       /s/ *Janaki G. Chopra*
                                                       MICHAEL G. WHEAT
                                                       JOSEPH J.M. ORABONA
                                                       JANAKI G. CHOPRA
                                                       COLIN M. MCDONALD
                                                       Special Attorneys to the Attorney General

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>    v.<br><br>RUDOLPH B. PUANA (1),<br><br>             Defendant. | CR. No. 19-00015-01 JMS-WRP<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED that:

I, Janaki G. Chopra, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, CA 92101-8893.

I am not a party to the above-entitled action. I have caused service of the foregoing on all parties in this case by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 1, 2021.

                                              */s/ Janaki G. Chopra*
                                              JANAKI G. CHOPRA
                                              Special Attorney